25CA1638 Peo in Interest of MBAH 04-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1638
City and County of Denver Juvenile Court No. 24JV30918
Honorable Lisa Gomez, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.B.A.H., a Child,

and Concerning M.O.H. III a/k/a M.E.H.,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect action, M.O.H. III, aka M.E.H., (father) appeals the judgment entered on a jury verdict adjudicating M.B.A.H. (the child) dependent or neglected.  Father also appeals the juvenile court's dispositional order adopting a treatment plan for him.  We affirm.

## I.     Background

¶ 2     Denver Human Services (the Department) received a referral raising concerns that the child was born premature and exposed to substances.  The Department opened a voluntary case while the child was in the neonatal intensive care unit.  When the child's medical team began discussing discharge two months later, the Department filed a petition in dependency or neglect, alleging that mother's and father's mental health and substance dependence prevented the child from being released into their care.

¶ 3     Mother admitted the petition and does not participate in this appeal.  Father requested an adjudicatory jury trial.  After a three-day trial, the jury returned special verdicts finding that the child was dependent or neglected under sections 19-3-102(1)(b), (c), and (d), C.R.S. 2025.  The juvenile court adjudicated the child

dependent and neglected and, after two treatment plan hearings, adopted a treatment plan for father.

## II. Jury Instructions

¶ 4 Father contends that the juvenile court erred by instructing the jury (1) regarding affirmative defenses and (2) that it could consider "any behaviors observed in open court" as evidence.

¶ 5 Father concedes that he did not preserve either of these issues. Nevertheless, he urges us to address them under the miscarriage of justice exception to the preservation requirement. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14. If an unpreserved error involves a miscarriage of justice, we may consider it for the first time on appeal. *In re R.G.B.*, 98 P.3d 958, 959 (Colo. App. 2004). But the miscarriage of justice exception has a high bar and a narrow scope. *People in Interest of M.B.*, 2020 COA 13, ¶¶ 23-24. We have recognized the exception only in "rare cases, involving unusual or special circumstances, . . . to prevent an unequivocal and manifest injustice." *In re E.R.S.*, 2019 COA 40, ¶ 38.

¶ 6 Father does not provide any explanation why the miscarriage of justice exception should apply to the unpreserved instructional issues he raises. We therefore will not consider these claims. *See*

*People in Interest of S.Z.S.*, 2022 COA 105, ¶ 29 (we will not consider an argument when a parent "develops no legal or factual argument in support of th[e] assertion").

III.    Ineffective Assistance of Counsel

¶ 7     Father contends that his counsel provided ineffective assistance at the adjudicatory jury trial. We conclude that this claim does not warrant reversal.

A.    Applicable Law

¶ 8     To successfully assert a claim for ineffective assistance of counsel, a parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance, and (2) the parent was prejudiced by counsel's errors. *A.R. v. D.R.*, 2020 CO 10, ¶ 48; *People in Interest of C.H.*, 166 P.3d 288, 291-92 (Colo. App. 2007).

¶ 9     For the performance prong, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see A.R.*, ¶¶ 2, 60 (the *Strickland* standard applies to claims of ineffective assistance of counsel in dependency or neglect proceedings). In conducting the reasonableness inquiry, a court

3

must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In addition, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

¶ 10 To show prejudice, the parent must show a reasonable probability that, but for counsel's deficient performance or unprofessional errors, the outcome of the proceeding would have been different. *A.R.*, ¶¶ 2, 60.

¶ 11 Because claims of ineffective assistance of counsel in dependency or neglect cases can be raised for the first time on appeal, the record may be insufficiently developed to allow us to resolve the parent's contentions without a remand to the district court for further proceedings. *Id.* at ¶ 63. To justify such a remand, however, the parent must allege facts with sufficient specificity to constitute a prima facie showing of ineffective assistance of counsel. *Id.* For example, if a parent alleges that counsel performed deficiently by failing to call or cross-examine witnesses, the parent must identify the witnesses, describe the

4

expected substance of their testimony, and provide a clear explanation of how that testimony would have affected the outcome of the proceeding. *See C.H.*, 166 P.3d at 291. If the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. *Id.*

## B. Analysis

¶ 12 Father contends that his counsel performed deficiently by failing to (1) "provide a meaningful rebuttal" to the petition; (2) cross-examine several witnesses; (3) object to jury instructions that father claims were erroneous; and (4) work with father to properly prepare for the trial. We are not persuaded that these claims require reversal.

### 1. Counsel's Rebuttal to the Petition

¶ 13 First, father contends that his counsel performed deficiently by failing to meaningfully defend against the petition. At the adjudicatory jury trial, the Department alleged that the child met four of the statutory definitions for a neglected or dependent child. Counsel's presentation of the case centered on father's love for his child and the fear that father experienced for the child's well-being. In closing argument, counsel asked the jury to find that father was

5

not at fault for the child's medically fragile condition. Father claims that counsel's approach "offered no tangible denial of the allegations in the petition" because "an adjudication in dependency and neglect does not require a finding of parental fault."

¶ 14      While it is true that a child can be found dependent or neglected without an explicit finding of parental fault, a finding of fault is required for sections 19-3-102(1)(b) and (d), both of which were alleged by the Department and found by the jury. We also note that the jury was asked whether the child was "without proper care through no fault of [father]" and whether the child was "not living at home with [father] through no fault of [father]," and the jury answered both questions, "No." Thus, the adjudication was not a "no fault" adjudication arguably suggested by counsel. Importantly, father does not allege that counsel could have, but failed to, present a different defense to the remaining allegations, such as disputing the factual allegations in the petition that the child was born premature, tested positive for cocaine, and required extensive medical attention that father refused to authorize. Thus, father has failed to sufficiently allege that counsel performed deficiently on this basis. *See A.R., ¶ 63.*

## 2.    Cross-Examination

¶ 15    Second, father contends that his counsel performed deficiently by declining to cross-examine several key witnesses.  True, counsel did not cross-examine the Department's caseworkers or the family time supervisor.  But father does not assert what, if anything, counsel should have reasonably expected to elicit from those witnesses to support father's position.  *See People v. Osorio*, 170 P.3d 796, 800-01 (Colo. App. 2007) (allegation that counsel failed to cross-examine certain witnesses was properly denied without a hearing where defendant did not explain what cross-examination "would have revealed").  Thus, father has failed to sufficiently allege that counsel performed deficiently on this basis.  *See A.R.*, ¶ 63.

## 3.    Jury Instructions

¶ 16    Third, father contends that his counsel performed deficiently by failing to object to two jury instructions.  The first, based on Colorado's model civil jury instruction CJI-Civ. 3:1 (2025), instructed the jury on the burden of proof and explained that the defendant had the burden to prove an affirmative defense.  Father asserts that including the part of the instruction addressing an affirmative defense, which was not at issue in the case, "likely

7

suggested" to the jury that father bore some burden of proof at the hearing. But father does not identify, and we cannot locate, anything in the record demonstrating that the instruction had this effect. Indeed, while the jury asked many questions during its deliberation, there is no indication that it was confused about which party bore the burden to prove the allegations in the petition.

¶ 17 The second challenged instruction arose from a juror question regarding whether the jurors were permitted to consider father's "outbursts" in making their decision. Father's counsel told the court, "I have no legal argument to make that would preclude those statements from being considered by the jury within the context of their judging this case." The court subsequently modified an instruction based on CJI-Civ. 3:8 (2025) to provide, in relevant part, that "the evidence in the case consists of sworn testimony of all the witnesses, an exhibit which has been received in evidence, *and any behaviors observed in open court*." (Emphasis added.)

¶ 18 Father contends that "there were ample grounds for counsel to object." In support of his argument, father cites only criminal cases, with no explanation of why the principles guiding a prohibition in the criminal context — where the question for the

8

jury is whether a crime occurred in the past — should apply in an adjudicatory hearing — where the jury must determine whether a child is dependent or neglected at the time of the hearing. *See K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006) (an order of adjudication relates "to the status of the child as of the date of the adjudication"). A dependency and neglect action is not a criminal proceeding or even a "quasi-criminal" proceeding. *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008); *see People in Interest of M.W.*, 2022 COA 72, ¶ 44 (case law makes clear that "dependency and neglect proceedings are not criminal in nature").

¶ 19 Even assuming that the principles animating the cited criminal cases apply here and that the juvenile court erred by instructing the jury that it could consider what it observed about father in court as evidence, we conclude that father has failed to sufficiently allege that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *See A.R.*, ¶¶ 2, 60. Father alleges only that the erroneous instruction "invited jurors to base their verdict on their personal opinions of [f]ather's courtroom conduct rather than on admissible evidence concerning

the [c]hild's status." But the admissible evidence that the child was dependent or neglected was overwhelming.

¶ 20 A caseworker testified that when the Department became involved, the child was hospitalized, supported by oxygen and tube feeding. The child's treating physician testified that the child was born thirteen weeks premature, required intensive critical care, and had a blood infection that required multiple transfusions, and that his umbilical cord tested positive for cocaine. The child developed brain bleeding and a fungal urinary tract infection and experienced multiple hernias. Given the child's condition at discharge, he would require many follow-up doctor's visits and significant special care, including administration of oxygen and tube feeding.

¶ 21 A caseworker also testified that father exhibited concerning behaviors at the hospital. He required a security escort to visit the child and reportedly stuck his finger down the child's throat during one visit. Father also refused or delayed providing consent to medically necessary procedures for the child, including a blood transfusion and hernia surgery. A caseworker testified that, for weeks, father did not cooperate with the department and was

aggressive with the caseworker, which frustrated the Department's initial efforts to assess father's protective capacities.

¶ 22　　Given this and other evidence presented at the adjudicatory trial, father's cursory assertion that "there is reasonable probability that the outcome of the adjudication trial would have been different" but for counsel's alleged ineffective assistance is insufficient to meet his burden to plead prejudice. *See A.B.*, ¶ 63.

### 4.　Preparation for Trial and Discovery

¶ 23　　Finally, father contends that his counsel failed to cooperate with him and did not make discovery available to him before the hearing. Father similarly asserted during the adjudicatory trial that he had not seen the child's records. In response, counsel reported to the court that he gave father the records that were provided to him in discovery. At the dispositional hearing, father again raised a concern about not having the child's medical records, which comprised more than 8,000 pages. Counsel represented that the records had been provided, and father asserted that he wanted them printed out. The juvenile court determined that counsel was not required to provide father with printed copies of discovery.

11

¶ 24     On appeal, father does not challenge the court's ruling that his counsel was not obligated to provide printed discovery. Based on that ruling, we conclude that counsel's decision to give father digital copies of discovery fell "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. Moreover, father does not explain how receiving those records in printed format would have altered the outcome of the proceeding. *See A.R.*, ¶¶ 60, 63.

¶ 25     We conclude that father has not made a prima facie showing of ineffective assistance of counsel, and we decline to remand the matter for an evidentiary hearing.

IV.     Father's Treatment Plan

¶ 26     Father next contends that the juvenile court erred by issuing inconsistent oral dispositional orders during two contested treatment plan hearings and failing to clarify in its written dispositional order which orders controlled. We acknowledge that the court's written dispositional order did not set forth the specific objectives the court adopted during the treatment plan hearings and that the better practice would be for it to do so. Nonetheless, we do not discern any reversible error.

## A. Standard of Review and Applicable Law

¶ 27    When a child is adjudicated dependent or neglected, the juvenile court must enter a dispositional order. Unless the proposed disposition is termination of the parent-child legal relationship, the court "shall approve an appropriate treatment plan." § 19-3-508(1)(e)(I), C.R.S. 2025.

¶ 28    We review a treatment plan adopted by the juvenile court for an abuse of discretion. *M.W.*, ¶ 32. A court abuses its discretion when its order is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.* at ¶ 12.

## B. Additional Background

¶ 29    One month after the adjudicatory hearing, the court held a dispositional hearing. Before the hearing, the Department filed a report that included a proposed treatment plan with objectives requiring father to address his mental health and any substance dependence, cooperate with the Department and other professionals, provide a stable environment for the child, and maintain a supportive and safe relationship with the child.

¶ 30    At the dispositional hearing, the Department made an oral motion to modify the mental health objective to add a requirement

that father complete a psychological evaluation; father objected. Father and the court proposed various changes to objectives requiring father to cooperate with professionals and develop a supportive and safe relationship with the child; the Department and the child's guardian ad litem agreed to those changes. Father did not object to the proposed objective that he provide a stable environment for the child. At father's request, the court set an evidentiary hearing on the mental health and substance use objectives and issued oral orders adopting the modifications made to the other objectives. The court did not issue a written order related to the first hearing.

¶ 31     When the parties returned a month later for the contested hearing, the juvenile court's understanding was that father "was objecting to every component of his treatment plan." Because no updated treatment plan had been filed after the first hearing, the Department again requested the court add a requirement that father complete a psychological evaluation. After hearing from father — who declined to be sworn in or testify but nonetheless conversed with the court — and after considering other witness testimony, the court issued an oral order explaining the necessity of

14

each treatment plan objective proposed by the Department. The court also approved the following:

- a requirement that father complete a psychological evaluation;

- a requirement that the Department "identify a person of color for that evaluation, somebody who is culturally competent"; and

- leave for father to request a hearing if he declined to consent to recommended procedures for the child.

¶ 32 Almost two months later, the juvenile court issued the "Adjudicatory and Dispositional Hearing Order" form proposed by the Department. Despite the volume of evidence and argument received by the juvenile court relative to father's treatment plan, the written order is sparse. It does not incorporate any of the court's findings around the appropriateness of each element, even by reference. Instead, it states that "the treatment plan for [father] as set forth in [the Department's] report prepared for this hearing, including any modifications made in open court, is hereby adopted as an order of this Court."

## C.    Analysis

¶ 33    Father argues that the written dispositional order is confusing because it ignores the fact that two treatment plan hearings were held resulting in two sets of "modifications made in open court." The Department contends that there is no confusion about father's treatment plan and refers us to the treatment plan it filed with the court as part of its report for the permanency planning hearing. But that document does not incorporate all the changes made by the court during the second treatment plan hearing, only the addition of a psychological evaluation as requested by the Department.  Although the court's written order is not a model of clarity, we discern no reversible error.

¶ 34    Father does not allege, and we do not conclude, that the order itself is arbitrary, unreasonable, or unfair.  The written dispositional order issued by the court only mentions the second treatment plan hearing.  During that hearing, father apparently rescinded the agreements he made at the first hearing.  And the court made new oral findings and orders as though the modifications made during the first hearing were no longer in effect.

16

¶ 35    Generally, when a conflict exists between oral and written orders, the written order controls. *People In Interest of S.R.N.J-S.*, 2020 CAO 12, ¶ 16. Thus, the court's written dispositional order — referencing only the second treatment plan hearing — controls. *See id.*; *see also People In Interest of Z.P.S.*, 2016 COA 20, ¶¶ 26-27 (a court may modify a dispositional order or a treatment plan's requirements as the case progresses).

¶ 36    Father urges us to reverse the dispositional order and remand the matter with instructions that the court issue a new dispositional order that clearly defines the terms of his treatment plan. The juvenile court certainly has the discretion to issue a new written order clearly setting forth the terms of the treatment plan, and it appears that doing so would benefit all the parties in this case. Even so, we conclude that the existing order does not constitute an abuse of discretion.

V.    Disposition

¶ 37    The judgment is affirmed.

JUDGE FREYRE and JUDGE SCHUTZ concur.

17